IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DARRELL LAW, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-818 (MN) |
| | ) | |
| ROBERT MAY, Warden, and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

## **MEMORANDUM OPINION**[1]

Darrell Law. *Pro se* Petitioner.

Sean P. Lugg, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

August 30, 2021
Wilmington, Delaware

---

[1]     This case was originally assigned to the Honorable Gregory M. Sleet, and was re-assigned to the undersigned on September 20, 2018.

NOREIKA, U.S. DISTRICT JUDGE:

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, subsequently amended and supplemented (collectively referred to as "Petition") filed by Petitioner Darrell Law ("Petitioner").  (D.I. 2; D.I. 7; D.I. 11; D.I. 12).  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 22; D.I. 24).  For the reasons discussed, the Court will deny the Petition.

I.    **BACKGROUND**

As summarized by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading up to his arrest and convictions are as follows:

> The State's witnesses at trial included three Delaware State Police officers and a forensic analyst chemist from the Department of Forensic Sciences.  Officer Thomas Macauley testified that he was patrolling Route 13 in Harrington on November 6, 2016.  After he saw a car going southbound at a high rate of speed, Officer Macauley directed the driver of the car to pull over.  Another police officer, Officer Brian Holl, was following Officer Macauley in another car and pulled over as well.
>
> When Officer Macauley spoke to the driver, Kurt McIntosh, regarding the reason for the stop, he thought McIntosh seemed extremely nervous.  Officer Macauley also noticed the odor of marijuana in the car.  [Petitioner] was in the front passenger seat of the car.  The police officers took [Petitioner] and McIntosh into custody.  [The police had determined that there were two active capiases for Petitioner's arrest].  Based on the marijuana odor, the police conducted a search of the car interior.  Officer Holl found 1,622 bags containing 14.488 grams of heroin under the front passenger seat and marijuana on the floor.
>
> Detective Jason Vernon testified that the heroin was for resale based on the amount and packaging.  Detective Vernon interviewed [Petitioner], who stated that he was delivering the heroin to a drug dealer in Rehoboth.  Because the video recording system was not working, the only record of the interview was Detective Vernon's handwritten notes.  A forensic analytical chemist testified that testing of a random sampling of the substance found in the car confirmed that it was heroin.

> McIntosh and [Petitioner] testified for the defense. McIntosh, who
> had pleaded guilty to Drug Dealing, testified that the heroin
> belonged to him and that [Petitioner] knew nothing about the heroin.
> [Petitioner] testified that he knew nothing about the heroin. He also
> testified that he lied to Detective Vernon about delivering the heroin
> to Rehoboth in order to cut a deal.

*Law v. State*, 185 A.3d 692 (Table), 2018 WL 2024868, at *1 (Del. 2018).

In January 2017, Petitioner was indicted on charges of aggravated possession of heroin, drug dealing, second degree conspiracy, and possession of drug paraphernalia. (D.I. 20-1 at 2, Entry No. 8). The Superior Court appointed counsel to represent Petitioner but, during his preliminary hearing, Petitioner requested to represent himself. (D.I. 20-1 at 1-2, Entry Nos. 6, 13); *see Law v. State*, 185 A.3d 692 (Table), 2018 WL 2024868, at *3 (Del. Apr. 30, 2018). After conducting a colloquy, the Superior Court permitted Petitioner to represent himself with previously appointed counsel to serve as standby counsel. (D.I. 20-1 at 2, Entry No. 13); *see Law*, 2018 WL 2024868, at *3. During jury selection in May 2017, however, Petitioner acknowledged standby counsel would be in a better position to represent him at trial. (D.I. 24 at 12).

> [The] Superior Court asked [Petitioner] if he wished to have his
> standby counsel represent him at trial. [Petitioner] said yes. Trial
> was then delayed for two weeks so former standby counsel could
> prepare for trial. Counsel represented [Petitioner], without any
> objection from [him], throughout the trial.

*Law*, 2018 WL 2024868, at *3. Following a two-day trial, a Superior Court jury found Petitioner guilty of aggravated possession of heroin, drug dealing, second degree conspiracy, and possession of drug paraphernalia. *Id*. at *1. During sentencing on August 29, 2017, Petitioner "asked for restoration of his right to self-representation. The Superior Court told [Petitioner] he could address that in the appeal process and sentenced [him]" to a total of twenty-five years of incarceration at Level V, suspended after five years for decreasing levels of supervision. *Law*, 2018 WL 2024868,

at *3; (D.I. 20-6 at 222).   Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentence on April 30, 2018.  *See Law,* 2018 WL 2024868, at *3.

In May 2018, Petitioner filed the Petition for habeas corpus relief presently pending before the Court.

## II.   <u>LEGAL PRINCIPLES</u>

### A.   **The Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C.  § 2254(a).   AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.   **Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to
protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give

"state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts*

*v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by

demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on

direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to

consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v.*

*Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as

"technically exhausted", if state procedural rules preclude him from seeking further relief in state

courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the

technical requirements for exhaustion" because state remedies are no longer available); *see also*

*Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Although treated as technically exhausted, such

claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749

(1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Federal courts may not consider the

merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the

procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of

justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d

255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural

default, a petitioner must show that "some objective factor external to the defense impeded

counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[2] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

C.      **Standard of Review**

When a state's highest court has adjudicated a federal habeas claim on the merits,[3] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state

---

[2]      *Murray*, 477 U.S. at 496.

[3]      A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law.  *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Id*.  In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."  *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1); *Appel*,

250 F.3d at 210.  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Petitioner's timely filed habeas Petition (as subsequently amended and supplemented) asserts the following six grounds for relief: (1) Petitioner's due process and equal protection rights were violated during his direct appeal (D.I. 2 at 5-7; D.I. 11 at 4); (2) Petitioner was denied his Sixth Amendment right to self-representation (D.I. 2 at 8); (3) the police violated Petitioner's Fourth Amendment rights during the traffic stop and subsequent search of the vehicle in which he was a passenger (D.I. 2 at 9-10; D.I. 7 at 4-6; D.I. 11 at 1-2; D.I. 17 at 2); (4) the indictment was defective because the conspiracy count failed to provide Petitioner with notice of the charges against him (D.I. 2 at 10; D.I. 7 at 7-8; D.I. 11 at 2-5; D.I. 12 at 4); (5) Petitioner's sentence is unfairly and unconstitutionally disparate from his co-defendant's sentence (D.I. 12 at 4,6; ); and (6) Petitioner is innocent and there was insufficient evidence to support his conviction (D.I. 7 at 7-8; D.I. 12 at 4-9).

### A.    Claim One: Due Process and Equal Protection Violations During Direct Appeal

In Claim One, Petitioner contends that his direct appeal was "methodically undermined" and that the Delaware Supreme Court's "kangaroo court procedure" and less-than "marginal equality" review of his case deprived him of due process.  (D.I. 2 at 6; D.I. 11 at 4-5).  Whether construed as alleging that Delaware judicial procedure in general deprived him of due process or,

more specifically, that he was denied due process and effective assistance of counsel when appellate counsel filed an *Anders*/Rule 26(c) brief on direct appeal, Claim One does not warrant relief.

The record reveals that Petitioner did not present either variation of Claim One to the Delaware Supreme Court on direct or post-conviction appeal.  At this juncture, any attempt by Petitioner to raise Claim One in a Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1).  *See Folks v. Phelps*, 2009 WL 498008, at *12 (D. Del. Feb. 26, 2009).  Because there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rule 61(i)(1) apply in this case,[4] any attempt to exhaust state remedies would be futile. Given this futility, the Court must treat Claim One as technically exhausted but procedurally defaulted.  Therefore, the Court cannot review the merits of the instant Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not assert any cause for his failure to present Claim One to the Delaware Supreme Court.[5]  In the absence of cause, the Court does not need to address the issue of prejudice. Nevertheless, Petitioner cannot demonstrate that he was prejudiced by his default of Claim One, because his complaints about the Delaware Supreme Court's procedure under *Anders v. California*, 386 U.S. 738 (1967) and Delaware Supreme Rule 26(c), and any related ineffective assistance of appellate counsel complaint regarding that same process, lack merit.  Recognizing

---

[4]     Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid.  *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5).  Petitioner does not allege a valid claim of actual innocence, and he does not allege a lack of jurisdiction or that a new rule of constitutional law applies to Claim One.

[5]     Petitioner does not address the State's procedural default argument in his Reply.  (D.I. 24).

that an attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal," the Supreme Court has held that an attorney may withdraw from representing a client on appeal, so long as the attorney follows a procedure that "affords adequate and effective appellate review to [the] indigent defendant[ ]" and, therefore, "reasonably ensures that an indigent appeal will be resolved in a way that is related to the merit of that appeal." *Smith v. Robbins*, 528 U.S. 259, 272, 276-77 (2000). In *Anders,* the United States Supreme Court articulated a procedure designed to protect an indigent appellant's constitutional rights when his attorney moves to withdraw. Pursuant to *Anders*, appellate counsel must conduct a "conscientious examination" of the case before seeking to withdraw from the case, and then file an appellate brief "referring to anything in the record that might arguably support the appeal." *Id*. at 744. The defendant must be given a copy of counsel's brief and given an opportunity to raise any points he wishes. *Id*. Then, the appellate court must conduct a "full examination of all the proceedings to decide whether the case is wholly frivolous." *Id*. "If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied." *Id*. at 741-42*; see also McCoy v. Ct. App. of Wisconsin, Dist. 1*, 486 U.S. 429, 442 (1988). In Delaware, motions to withdraw from representing an appellant are governed by Delaware Supreme Court Rule 26(c) which, in turn, is modeled on the procedure set forth in *Anders*. *See* Del. Sup. Ct R. 26, Committee Comment.

The record in Petitioner's case reveals that appellate counsel followed the proper procedure for withdrawal under Rule 26 and, therefore, he also followed the proper withdrawal procedure articulated in *Anders*. For example, appellate counsel thoroughly reviewed the record and determined that there were no meritorious appellate claims. *See Law*, 2018 WL 2024868, at *2. Counsel then advised Petitioner of that finding, and timely filed a Rule 26(c) non-merit appellate

9

brief on Petitioner's behalf that included the claims Petitioner wished to raise. *See id.*; (D.I. 20-5).  Finally, the Delaware Supreme Court conducted its own independent review of the record, determined that counsel made a conscientious examination of the record before moving to withdraw, and concluded that Petitioner's appeal was "wholly without merit and devoid of any arguably appealable issue." *Law,* 2018 WL 2024868, at *3.  Given these circumstances, Petitioner cannot demonstrate that he suffered prejudice by failing to challenge the *Anders*/Rule 26(c) procedure followed by Delaware Supreme Court and/or appellate counsel.

Finally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of actual innocence.  Accordingly, the Court will deny Claim One as procedurally barred from habeas review.

### B.    Claim Two: Violation of Right to Self-Representation

In Claim Two, Petitioner contends that the Superior Court violated his Sixth Amendment right to self-representation by appointing stand-by counsel to represent him during his trial. (D.I. 2 at 7; D.I. 24 at 4).  Petitioner raised the same argument on direct appeal, and the Delaware Supreme Court determined it to be meritless, holding that Petitioner "waive[d] his right to self-representation after asserting it." *Law*, 2018 WL 2024868, at *3.  In light of these circumstances, Petitioner will only be entitled to relief on Claim Two if the Delaware Supreme Court's decision were either contrary to, or an unreasonable application of, clearly established federal law.

The established Supreme Court precedent applicable to claims involving the Sixth Amendment right to self-representation is *Faretta v. California*, 422 U.S. 806 (1975), and its progeny.  In *Faretta*, the Supreme Court held that a criminal defendant has a Sixth Amendment right to represent himself and, therefore, may affirmatively waive his right to counsel." *Id*. at 834-

35.  Although a defendant's right to represent himself is fundamental in nature, representation by counsel is the standard, not the exception, and there is a strong presumption against the waiver of the right to counsel.  *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 161 (2000); *Patterson v. Illinois*, 487 U.S. 285, 307 (1988).  A criminal defendant's waiver of counsel is only valid if the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta,* 422 U.S. at 835.  Pursuant to *Faretta*, a trial court must ensure that a defendant's waiver of counsel is knowing, voluntary, and intelligent before permitting him to proceed *pro se*. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

Nevertheless, a defendant's right to self-representation is not unqualified.  As noted by the Supreme Court, "even at the trial, [ ], the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez,* 528 U.S. at 162.  For instance, an assertion of the right to proceed *pro se* must be made in a timely fashion, and

> after trial has commenced – *i.e.*, at least after the jury has been empaneled – the right of self-representation is curtailed.  In that context, district courts have discretion to deny an untimely request to proceed *pro se* after weighing the prejudice to the legitimate interests of the defendant against the potential disruption of proceedings already in progress.

*United States v. Bankoff*, 613 F.3d 358, 373 (3d Cir. 2010).  In turn, a properly asserted *Faretta* right may be intentionally waived by a defendant through a verbal request.  *See United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir.1995) (explaining that the "most commonly understood method of 'waiving' a constitutional right is by an affirmative, verbal request.").  Although the United States Supreme Court has not explicitly considered whether a properly asserted *Faretta* right may be waived, or abandoned, through subsequent conduct, the Supreme Court has suggested

that such a waiver may occur.  For example, in *McKaskle v. Wiggins*, 465 U.S. 168 (1984), the Supreme Court opined that even after a defendant has been granted the right to proceed *pro se* and standby counsel has been appointed, he may waive his *Faretta* rights, explaining that "[o]nce a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle*, 465 U.S. at 182-84.  Notably, under Third Circuit law, a defendant who has unequivocally asserted his right to self-representation may thereafter forfeit that right by deliberately engaging in serious and obstructionist misconduct, vacillating over his representation, or manipulating the proceedings.  *See Buhl v. Cooksey*, 233 F.3d 783, 800-01 (3d Cir.2000).

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court did not specifically apply *Faretta* and its progeny in affirming the trial court's decision and holding that Petitioner's right to self-representation had not been violated. Nevertheless, the Court concludes that the Delaware Supreme Court's decision was not contrary to Supreme Court precedent, because the federal and state cases cited therein[6] refer to *Faretta* and properly articulate the parameters of a defendant's right to self-representation.  *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme

---

[6]    The Delaware Supreme Court cited *to Cuffe v. State*, 2014 WL 5254614, at *8 n.34 (Del. Oct. 14, 2014), which cited to *Brathwaite v. State*, 2006 WL 1911132, at *2 (Del. July 10, 2006) which cited *Buhl v. Cooksey*, 233 F.3d 783, 800 (3d Cir.2000) which cited *Faretta*. *See Law*, 2018 WL 2024868, at *3 n.14.

Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court's decision involved an unreasonable application of Supreme Court precedent to Petitioner's case. Here, Petitioner made two requests to represent himself – the first request was made during his preliminary hearing and the second request was made during his sentencing hearing. The Superior Court granted Petitioner's first request to represent himself, and Petitioner proceeded *pro se* until jury selection when, contrary to his assertion here, he explicitly stated he wished to have standby counsel represent him at trial. *See Law*, 2018 WL 2024868, at *3; (D.I. 24 at 5-6, 12, 14-15). Standby counsel represented Petitioner throughout the trial, without any objection from Petitioner. Then, during the sentencing hearing, after the parties had addressed the Superior Court, Petitioner asked to have his right to self-representation restored. (D.I. 20-6 at 222). The Superior Court denied Petitioner's request, explaining:

> Well, at this stage, sir, this is a sentencing. We're through that. I mean, you can address that through the appeal process. As far as your sentencing today, I'm ready to issue your sentence now, so at this point, we're going to go forward with your sentencing.

(D.I. 20-6 at 223). On direct appeal, the Delaware Supreme Court held that the Superior Court's denial of Petitioner's second request did not violate his right to self-representation, opining:

> At sentencing, after all of the parties had addressed the Court, [Petitioner] asked for restoration of this right to self-representation. The Superior Court told [Petitioner] he could address that in the appeal process and sentenced [Petitioner].
>
> The record does not support [Petitioner's] claim that the Superior Court infringed upon his right to represent himself. A defendant may, as [Petitioner] did here, waive his right to self-representation after asserting it. The record shows that [Petitioner] initially exercised his constitutional right to represent himself, but then chose to exercise his constitutional right to counsel at trial.

*Law*, 2018 WL 2024868, at *3.

The record supports the Delaware Supreme Court's holding.  The Superior Court granted Petitioner's first timely request for self-representation after conducting a colloquy, and Petitioner represented himself with the assistance of standby counsel during pretrial proceedings.  Although Petitioner contends that the trial court "*sua sponte*" insisted and essentially forced him to relinquish his right to self-representation and exercise his right to counsel during the pre-trial colloquy that occurred just before jury selection on May 15, 2017, (D.I. 25 at 4), the following excerpt from that colloquy belies his assertion:

|  |  |
|---|---|
| PETITIONER: | Well, I'm having some – just in terms of the interaction, I'm aware that [defense counsel] is in a better position as opposed to my condition and my circumstances which pretty much kind of hinders me and may project somewhat of a negative light on the jury.  I'm also having an issue in terms of understanding precisely how this objection process should work out in the event that I have an objection. |
|  | *        *        * |
| COURT: | So do you want to reconsider that, I mean, because once we start, you know, we're going to start jury selection, we're going to go forward with the case, and it's not the time to do it in the middle of the trial.  In fact, at that point in time I'm not going to accept it.  We're going to reconfirm this waiver of your right to counsel, and if you reconfirm it, you're doing it on your own. |
| PETITIONER: | Okay, I understand. |
| COURT: | Would you like [defense counsel] to represent you in the case?  and then you can still have the input that you need to have with |

14

|  | him, but then --- but actually have him working for you in real time? |
|---|---|
| PETITIONER: | Yes. |
| COURT: | Okay.  Well, and you know, at this stage, [defense counsel] was not necessarily prepared to go to trial today and the Court is not going to force him to go to trial on this issue today.  Let's get his input on what he feels is appropriate.  So at this stage you want to have [defense counsel] represent you? |
| PETITIONER: | At trial, yes, sir. |

(D.I. 24 at 12, 14-15).  This excerpt demonstrates that Petitioner explicitly and voluntarily terminated his self-representation and requested the appointment of standby counsel.  Additionally, in one of his submissions in this proceeding, Petitioner himself states "he agreed with the court's suggestion to accept [defense counsel] as counsel of record at trial."  (D.I. 11 at 7).  Given these circumstances, the Court concludes Delaware Supreme Court reasonably determined the facts and reasonably applied *Faretta* and its progeny when holding that Petitioner waived his right to self-representation after asserting it.

To the extent the Court should liberally construe Claim Two as also alleging that the Superior Court violated Petitioner's right to self-representation by denying his request to proceed *pro se* made at the end of the sentencing hearing, the argument is similarly unavailing.  To begin, when read in context with Petitioner's complaint about the appointment of appellate counsel (D.I. 24 at 4), the Court notes the very real possibility that the request to proceed *pro se* that Petitioner asserted at the end of the sentencing hearing was intended to be a request for self-representation during his direct appeal rather than a request for self-representation during the remainder of his sentencing.  When viewed in this manner, Petitioner appears to argue that the Delaware Supreme Court erroneously held that his May 15, 2017 waiver of his right to self-

representation also waived his right to proceed *pro-se* on direct appeal.  (D.I. 24 at 4).  If this construction of Claim Two is correct, the Court will dismiss the argument as procedurally barred. Petitioner did not present this formulation of his contention regarding the Superior Court's denial of his second request for self-representation to the Delaware Supreme Court on direct or post-conviction appeal, and he has not presented any cause and prejudice or miscarriage of justice argument to excuse this default.

The Court also acknowledges that Petitioner may be arguing that the Superior Court's denial of his second request violated his right to proceed *pro se* for the remainder of the sentencing hearing.  This alternate argument is also unavailing.

It is well-settled that a *Faretta* request for self-representation may be waived if not asserted in "a timely manner."  *Martinez*, 528 U.S. at 162.  Although the Supreme Court has not set specific parameters for determining what constitutes a "timely manner," the Supreme Court has opined that a timely *Faretta* request is one that is made "weeks before trial."  *Faretta*, 422 U.S. at 807, 835. Significantly, the *Faretta* Court explained that a trial court may deny "a defendant his right to self-representation," *inter alia*, if "he makes the request in untimely fashion such that granting it would disrupt the proceedings."  *Faretta*, 422 U.S. at 806-07.

The Court views the Superior Court's reference to "this stage" of "sentencing", and the Delaware Supreme Court's citation to *Cuffee v. State*, 2014 WL 5254614 (Del. Oct. 14, 2014), as implicit determinations by both state courts that Petitioner's second *Faretta* request was untimely because he asserted it after the guilty verdict.  Given the timing and manner of Petitioner's second request to proceed *pro se*, Petitioner's prior unequivocal waiver of his right to self-representation, and the absence of any Supreme Court precedent addressing the timeliness of a *Faretta* request asserted at the end of a sentencing hearing, the Court cannot conclude that the Delaware Supreme

Court unreasonably applied clearly established federal law by holding that the Superior Court did not violate Petitioner's right to self-representation. *See generally Wright v. Van Patten,* 552 U.S. 120, 126 (2008) ("[B]ecause our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established Federal law"); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonably applied clearly established Federal law' [under] § 2254(d)(1)."). Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d).

### C. Claim Three: Fourth Amendment Violation

In Claim Three, Petitioner contends that the police violated his Fourth Amendment rights during the traffic stop because they lacked probable cause to search the vehicle in which he was a passenger. (D.I. 2 at 9-10; D.I. 7 at 4-6; D.I. 11 at 1-2; D.I. 17 at 2). Specifically, Petitioner contends the Superior Court erred in denying his motion to suppress the heroin found in the car because the State failed to provide evidence to support the police testimony that the search of the car was prompted by an odor of marijuana emanating from the open driver window. (D.I. 20-7 at 5).

The State argues that Petitioner's Fourth Amendment Claim is not cognizable on federal habeas review under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). (*See* D.I. 22 at 12-13). In *Stone*, the Supreme Court held that a federal court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state court. *See also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for

suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing the petitioner's Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Notably, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id*.

In this case, Petitioner filed a pre-trial motion to suppress the evidence seized from the vehicle pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure. The Superior Court denied the suppression motion after conducting a hearing. Petitioner then challenged that decision in his direct appeal to the Delaware Supreme Court, presenting the same argument raised in the instant Petition. The Delaware Supreme Court affirmed the Superior Court's judgment after rejecting Claim Three as meritless. *See Law*, 2018 WL 2024868, at *2.

This record demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the Delaware state courts. The fact that Petitioner disagrees with the state court decisions and the reasoning utilized by the state courts is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Claim Three as barred by *Stone*.

### D.    Claim Four:  Defective Indictment

In Claim Four, Petitioner contends that the indictment was defective because it failed to provide notice of the conspiracy offense charged. (D.I. 2 at 10). Specifically, Petitioner alleges that the "circumstances in connection to the event of [his] arrest do not indicate [the] *mens rea* of [the] drug dealing conspiracy" that allegedly occurred on November 6, 2016. (D.I. 2 at 10).

The State contends that Claim Four is not cognizable on federal habeas review because the "Fifth Amendment right to a grand jury indictment does not apply to criminal prosecutions." (D.I. 22 at 14).  Petitioner, however, expressly premises Claim Four on his due process right to notice, which invokes the Sixth Amendment's right "to be informed of the nature and cause of the accusation."  U.S. Const. Amend VI; *see also Dixon v. May*, 2021 WL 1226438, at \*6 (D. Del. Mar. 31, 2021).  This right applies to the states through the Fourteenth Amendment, *see In re Oliver*, 333 U.S. 257 (1948), such that a state prisoner has the due process right "to receive reasonable notice of the charges against him."  *Coffield v. Carroll*, 2004 WL 2851801, at \*5 (D. Del. Dec.1, 2004); *cf. Peters v. Kiff*, 407 U.S. 493, 496 (1972).  Therefore, Claim Four presents an issue cognizable on federal habeas review.

To determine whether an indictment satisfies due process, a court must ask whether the indictment: (1) contains the elements of the offense charged; (2) provides the defendant adequate notice of the charges against which he must defend; and (3) protects against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense*. See Russell v. United States*, 369 U.S. 749, 763-64 (1962); *see also Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975) ("Insofar as due process claims . . . the indictment [must] fairly apprise the defendant of the charges to which he was subjected and of the basic facts upon which they were founded and provide[ ] adequate protection for double jeopardy purposes").

Although Claim Four is cognizable, the record reveals that Petitioner failed to exhaust state remedies for the defective indictment argument raised therein.  First, because Petitioner raised an entirely different "defective indictment" argument in his motion to dismiss, he has failed to satisfy the "fair presentation" requirement of the exhaustion doctrine.  In the motion to dismiss, Petitioner argued that the indictment should be dismissed because he was innocent, not because, as he argues

19

here, the count failed to indicate sufficient *mens rea*.[7]  (D.I. 20-12 at 2).  Second, even if the instant argument in Claim Four could somehow be construed to align with the argument raised in Petitioner's motion to dismiss the indictment, Petitioner did not present the a "defective indictment" argument to the Delaware Supreme Court on direct or post-conviction appeal.

At this juncture, any attempt by Petitioner to raise Claim Four in a Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1).  *See Folks v. Phelps*, 2009 WL 498008, at *12 (D. Del. Feb. 26, 2009).  As there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rule 61(i)(1) apply in this case, any attempt to exhaust state remedies would be futile.  Consequently, the Court must treat Claim Four as technically exhausted but procedurally defaulted, meaning that it cannot review the merits of the instant Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

To the extent Petitioner attempts to establish cause by blaming appellate counsel's failure to include the argument in the Rule 26(c)/*Anders* non-merit brief on direct appeal, the attempt is unavailing.  (D.I. 2 at 5, 10, 12).  Petitioner was given an opportunity to include any arguments he wished to present on direct appeal in appellate counsel's Rule 26(c)/*Anders* brief, and, at Petitioner's request, appellate counsel included Claims Two and Three in the section titled "Pro Se Points for Consideration."  (D.I. 20-5 at 13-20).  As nothing prevented Petitioner from including the instant defective indictment argument in the points to be considered, the fact that appellate counsel filed an *Ander's* brief does not establish cause for Petitioner's default of Claim Four.

---

[7]     Specifically, the motion to dismiss the indictment alleged that, "as a passenger and non-custodian of the motor vehicle where illegal contraband was seized [Petitioner was] alleviat[ed] [. . .] of any responsibility for that contraband."  (D.I. 20-12 at 2).  The Superior Court denied the motion to dismiss the indictment for failing to set forth a basis in support of the relief sought, and Petitioner did not appeal that decision.  (D.I. 20-11).

In the absence of cause, the Court need not address the issue of prejudice. Nevertheless, Petitioner cannot demonstrate prejudice because his argument does not establish that the indictment was defective. As explained by the United States Supreme Court, the sufficiency of an indictment is measured by two criteria: "first, whether [it] contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. United States*, 369 U.S. 749, 763–64 (1962): *see also Wojtycha*, 517 F.2d at 425 ("Insofar as due process claims . . . the indictment [must] fairly apprise the defendant of the charges to which he was subjected and of the basic facts upon which they were founded and provide[ ] adequate protection for double jeopardy purposes").

Under these standards, Count Three of the indictment was sufficient. Pursuant to Delaware law, a person is guilty of second degree conspiracy "when, intending to promote or facilitate the commission of a felony, the person:

> (1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or
>
> (2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy.

11 Del. Code § 512.

Count Three of the indictment provides:

> CONSPIRACY SECOND DEGREE,  a felony in violation of Title 11, Section 512 of the Delaware Code of 1974 as amended.
>
> [PETITIONER] AND KURTIS S. MCINTOSH, on or about the 6th day of November, 2015, in the County of Kent, State of Delaware,

> with intent to promote or facilitate the commission of a felony, did
> agree with each other to engage in conduct constituting the felony
> of Drug Dealing and one or more conspirators did commit an overt
> act in the furtherance of said conspiracy.

(D.I. 20-6 at 11).   In turn, Count Two of the indictment (referenced in Count Three) charged

Petitioner with the "felony of Drug Dealing" as follows:

> DRUG DEALING, a felony in violation of Title 16, Section 4752(1)
> of the Delaware Code, of 1974 as amended.
>
> DARRELL LAW AND KURTIS S. MCINTOSH, on or about the
> 6th day of November 2016, in the County of Kent, State of Delaware,
> did knowingly deliver and/or possess with intent to deliver 4 grams
> or more of morphine, opium, any salt, isomer or salt of an isomer
> thereof, or heroin as described in 16 Del. Code § 4714, or any
> mixture containing any such controlled substance.

(D.I. 20-3 at 6).

As a general rule, an indictment is sufficient if it sets forth the offense in the words of the

statute, provided that the language expresses the element of the offense intended to be punished.

*See Hamling v. United States*, 418 U.S. 87, 117 (1974) ("It is generally sufficient that

an indictment set forth the offense in the words of the statute itself, as long as those words of

themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the

elements necessary to constitute the offence intended to be punished."); *United States v. Kemp,* 500

F.3d 257, 280 (2007) (reiterating that "no greater specificity than the statutory language is required

so long as there is sufficient factual orientation to permit the defendant to prepare his defense and

to invoke double jeopardy in the event of a subsequent prosecution.").

Here, Count Three of the indictment tracks the language of 11 Del. Code § 512, and also

identifies the person with whom Petitioner conspired, the date of conspiracy, and location where

the conspiracy occurred.  Because the indictment was sufficient to provide Petitioner notice of the

second degree conspiracy charge against him, he was not prejudiced by his default of Claim Four.

Finally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Four as procedurally barred from habeas review.

### E.    Claim Five:  Illegal Sentence

In Claim Five, Petitioner contends that his five-year sentence for drug possession is unconstitutionally disparate from the one-year sentence his co-defendant McIntosh received after pleading to guilty to drug dealing.[8]  (D.I. 2 at 12 ¶ 13(a); D.I. 7 at 8; D.I. 12 at 6).  A state court's sentencing decision and claims arising from such decision are not cognizable on federal habeas review unless the sentence exceeds statutory limits or is wholly unauthorized by law.  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); *United States v. Roberts*, 404 F. App'x 624, 625 (3d Cir. 2010) ("In the absence of any evidence to suggest that the disparate sentences were based on an impermissible factor such as race or gender, Roberts must show at the very least that he was similarly situated to [his co-defendants]."); *Siena v. Carroll*, 2005 WL 768487, at *3 (D. Del. Apr. 5, 2005).  Here, Petitioner does not argue that his sentence exceeds the range prescribed by state law, only that it is unfair because it is longer than his codefendant's sentence.  Therefore, the Court will deny Claim Five for failing to assert a proper basis for federal habeas relief.

---

[8]    Petitioner's co-defendant (McIntosh) "pled guilty to drug dealing and was sentenced to one year at Level V."  (D.I. 20-6 at 212).  During Petitioner's sentencing hearing, Petitioner addressed the court, stating, "It's my opinion that any sentence outside of or even slightly more severe, one day more than Mr. McIntosh, is a travesty of justice in my opinion.  I would respectfully ask for a sentence of time served."  (D.I. 20-6 at 222).

F.      **Claim Six:  Actual Innocence/Insufficient Evidence**

In his final Claim, Petitioner contends that he is actually innocent "of conspiring to possess and deal drugs," as evidenced by his co-defendant's "acceptance of responsibility and plea of guilty."  (D.I. 12 at 3-4).  He also states that the analysis for his actual innocence claim "may ultimately boil down to a standard of review pursuant to *Jackson v. Virginia*, 443 U.S. 307, 324 (1979),"[9] and that "no rational factfinder could have found [him] guilty beyond a reasonable doubt of a conspiracy to possess and deal drugs."  (*See* D.I. 12 at 6-7).  Whether treated as a freestanding claim of actual innocence or a claim alleging there was insufficient evidence to support his convictions, Claim Six does not warrant habeas relief.

To begin, although a prisoner may assert actual innocence as a gateway for obtaining habeas review of defaulted claims in "certain exceptional cases involving a compelling claim of actual innocence," *see House v. Bell*, 547 U.S. 518, 521, 536-37 (2006), the Supreme Court has not yet resolved if a freestanding claim of actual innocence is cognizable on federal habeas review. *See Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)).  Even for gateway actual innocence claims that are asserted in an effort to overcome a procedural bar for habeas cases, "[a]ctual innocence means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623.  Assuming, arguendo, that an assertion of actual innocence could constitute a freestanding claim, a petitioner's burden on any such claim "would necessarily be extraordinarily high" and "more demanding" than that applied to gateway actual-innocence claims.  *Herrera v. Collins*, 506 U.S. 390, 416 (1993); *see also Reeves*, 897 F.3d at 160 n.4 (describing hypothetical freestanding actual-innocence standard as "more demanding"

---

[9]       In *Jackson v. Virginia*, the Supreme Court articulated the standard for reviewing the sufficiency of the evidence to support a criminal conviction.  *See Jackson v. Byrd*, 105 F.3d 145, 148 (1997) ("In a federal habeas corpus proceeding where sufficiency of the evidence is at issue, *Jackson v. Virginia* sets forth the applicable standard.").

than that applied to gateway actual-innocence claims).  To put the burden for establishing a freestanding claim of actual innocence in perspective, a gateway actual innocence claim will only succeed if it is based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Petitioner has not presented any facts to establish his actual innocence, nor has he presented any colorable evidence of his actual innocence.  Therefore, Petitioner's instant assertion of innocence does not warrant relief because it does not satisfy the *McQuiggan/ Schlup* standard for actual innocence.

To the extent Claim Six asserts that there was insufficient evidence to support Petitioner's convictions, the record reveals that Petitioner did not present his insufficient evidence argument to the Delaware Supreme Court on direct or post-conviction appeal.  Because Delaware state court procedural rules would preclude him from presenting the insufficient evidence argument to the Delaware courts at this point in time, the argument is procedurally defaulted.  Petitioner has not established any cause for his default[10] and, therefore, the Court need not address the issue of prejudice.  Finally, given Petitioner's failure to provide new reliable evidence of his actual innocence, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default.

Accordingly, the Court will deny Claim Six in its entirety.

---

[10]     Petitioner appears to blame his default of the insufficient evidence argument in Claim Six on appellate counsel's failure to include the Claim in the Rule 26(c)/*Anders* Brief.  (D.I. 2 at 12).  The Court has already rejected Petitioner's attempt to establish cause on appellate counsel's failure to include certain arguments in the Rule 26(c)/*Anders* Brief.  *See supra* Section III. D.

IV.    **CERTIFICATE OF APPEALABILITY**

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable.  Therefore, the Court will not issue a certificate of appealability.

V.    **CONCLUSION**

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability.   An appropriate Order shall issue.